IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Andrew Evan Howland, | : | CASES CONSOLIDATED |
|                     Appellant | : | |
| | : | |
|       v. | : | |
| | : | |
| Officer Karl Hartranft, Officer | : | |
| Christopher Pfeiffer, Officer Bart | : | |
| Hollis, Detective Robert Bradfield of | : | |
| the West Hempfield PD, Judge | : | |
| Nancy Hammil, Judge Miles Bixler, | : | |
| Judge Andrew Lafever, Judge Donald | : | Nos. 1478 C.D. 2024 |
| Totaro, District Attorney Heather | : | 1479 C.D. 2024 |
| Adams, and ADA Amy Muller | : | Submitted: February 3, 2026 |

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                  FILED: March 16, 2026

          Andrew E. Howland (Howland), *pro se*, appeals from two orders of the Court of Common Pleas of Lancaster County (Trial Court) dated July 5, 2024, sustaining preliminary objections of Appellees and dismissing, with prejudice, his civil complaint (Complaint) against the following Defendants: District Attorney Heather Adams, Esq. (DA Adams); Assistant District Attorney Amy Muller, Esq. (ADA Muller) (collectively Attorney Appellees); the Honorable Nancy G. Hamill (Judge Hamill); the Honorable Miles K. Bixler (Judge Bixler); the Honorable Andrew T. Lefever (Judge Lefever); and the Honorable Donald R. Totaro (Judge Totaro) (collectively, Judicial Appellees); and Officer Karl Hartranft (Hartranft); Officer Christopher Pfeiffer (Pfeiffer); Officer Bart Hollis (Hollis); and Detective

Robert Bradfield (Bradfield) (collectively, Law Enforcement Appellees).[1]  Upon review, we affirm the Trial Court's orders.

## I. Background

On August 18, 2021, Howland was convicted of multiple felony criminal offenses on three criminal dockets after a consolidated jury trial, including Kidnapping of a Minor, Statutory Sexual Assault, Child Pornography, and Interference with Custody of Children. *Cmwlth. v. Howland* (C.P., Nos. 36-CR-5410-2020; 36-CR-5421-2020; 36-CR-2475-2021); Supplemental Reproduced Record (R.R.) at 70b.  As a result, Howland was issued an aggregate sentence of 30 to 105 years' incarceration.  *Id.*  He thereafter appealed to the Superior Court from the judgment of his sentence and argued that the Trial Court abused its discretion by imposing an excessive sentence.  *Cmwlth. v. Howland* (No. 62 MDA 2022, filed November 9, 2022).  The Superior Court concluded that the Trial Court did not abuse its discretion and appropriately determined—after considering all relevant facts—that "Howland preyed on and abused the child."  *Id.* at *5.

In March 2024, Howland filed a Complaint with the Trial Court against all the Appellees alleging "violations [that] occurred prior to, during, and after the Criminal Trial held in [Howland's] case."  R.R. at 12b & 30b.  The matters were separately docketed as to Attorney, Judicial, and Law Enforcement Appellees.

---

[1] This Court notes that while Law Enforcement Appellees are listed in the caption, there is no final appealable order as to Law Enforcement Appellees.  On July 25, 2024, Howland filed a motion for summary judgment against Law Enforcement Appellees in a separate docket.  *See* R.R. at 105b.  After retaining counsel, Law Enforcement Appellees filed a timely response and noted that they were never served with original process.  *See* Law Enforcement Appellees' Br. at 11.  On September 3, 2024, the Trial Court denied Howland's motion for summary judgment and Howland did not file an appeal to such order.  *See* Trial Court Order, 9/3/24.

However, there was no service of process on Law Enforcement Appellees. Law Enforcement Appellees' Br. at 10.

In the Complaint,[2] Howland asserted that Law Enforcement Appellees committed criminal trespass and subjected him to unlawful searches and seizures, Judicial Appellees deprived him of a fair trial, and Attorney Appellees engaged in willful misconduct by withholding evidence and making hyperbolic statements at trial and to the media. *Id.* at 13b-22b. Howland thus sought $7,000,000 in punitive damages because "[the Appellees'] willful actions lead [sic] to . . . [his] incarceration with an excessively long prison sentence" as well as resulting mental, emotional, and physical trauma from the alleged constitutional violations. *Id.* at 28b.

On April 1, 2024, Attorney Appellees filed Preliminary Objections to Howland's Complaint on the grounds of insufficient specificity, legal insufficiency, high public official immunity, and improper appeal of a criminal conviction. R.R. at 70b-78b. Shortly thereafter, Judicial Appellees filed Preliminary Objections seeking dismissal of Howland's Complaint with prejudice for legal insufficiency. Judicial Appellee's Br. at 12. Howland filed responses and on July 5, 2024, the Trial Court separately sustained the Attorney and Judicial Appellees' Preliminary Objections and dismissed Howland's claims with prejudice. *Id.*; R.R. at 79b & 96b-97b.

---

[2] As discussed further below, for purposes of disposing of preliminary objections, all well-pleaded facts averred in the Complaint are taken as true. *Podolak v. Tobyhanna Twp. Bd. of Supervisors*, 37 A.3d 1283, 1287 (Pa. Cmwlth. 2012).

Howland filed two notices of appeal that were separately docketed on July 25, 2024.[3] Notice of Appeal, 7/25/2024. On July 26, 2024, the Trial Court ordered Howland to file a concise statement of matters complained of on appeal in accordance with Rule 1925(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b)(1), which he filed on August 20, 2024. R.R. at 99b. Thereafter, the Trial Court issued two 1925(a) Opinions, Pa.R.A.P. 1925(a), which maintained that the July 5, 2024 orders sustaining the Preliminary Objections should be upheld because Howland's claims against Attorney and Judicial Appellees were barred by high public official and judicial immunity, respectively. *Id.* at 134b; Judicial Appellees' Br. at 12-13.

On January 29, 2025, this Court consolidated Howland's two appeals. Cmwlth. Ct. Order, 1/29/25. This Court also issued an order stating that "the dockets in the above-captioned matters reflect that the briefs of [Law Enforcement Appellees] were due April 9, 2025, and that to date the same have not been filed." Cmwlth. Ct. Order, 6/11/25. This Court's order stated that Law Enforcement Appellees would be precluded from oral argument if their briefs were not filed within 14 days, which they thereafter filed on June 23, 2025.[4] *See* Cmwlth. Ct. Order, 6/11/25.

---

[3] On July 25, 2024, Howland also filed a motion for summary judgment against Law Enforcement Appellees. *See* R.R. at 105b. After retaining counsel, Law Enforcement Appellees filed a timely response and noted that they were never served with original process. *See* Law Enforcement Appellees' Br. at 11. On September 3, 2024, the Trial Court denied Howland's motion for summary judgment and Howland did not attempt to file an interlocutory appeal from that order. *See* Trial Court Order, 9/3/24.

[4] We again note that no final appealable order, nor any pending appeal existed against Law Enforcement Appellees, who are therefore not proper parties to the appeal.

## II. Issues

Before this Court,[5] Howland asserts several errors,[6] which we reorder and summarize as follows.

---

[5] As this Court has explained, "[a]n appellate court's review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law." *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009) (citing *In re Est. of Bartol*, 846 A.2d 209, 213 (Pa. Cmwlth. 2004)). This review raises a question of law, such that our standard of review is *de novo* and our scope of review is plenary. *Id.* (citing *Buffalo Twp. v. Jones*, 813 A.2d 659, 664 n.4 (Pa. 2002)).

[6] Howland's statement of issues reads in full as follows:

1. Did [the] Trial Court abuse its discretion by sustaining Attorney Appellees' Preliminary Objections without considering Appellant's Response to these Preliminary Objections?

2. Did [the] Trial Court abuse its discretion by failing to state on the Record which of the Preliminary Objections raised by Attorney Appellees were sustained and upon which grounds, and caused Appellant's Complaint to be dismissed with prejudice?

3. Did [the] Trial Court commit an error of law by stating that Appellant's Complaint lacked the required specificity?

4. Did [the] Trial Court abuse its discretion or commit an error of law by stating that Appellant failed to state a viable claim?

5. Did [the] Trial Court commit an error of law by stating that Attorney Appellees are entitled to High Public Official Immunity, regardless of their willful misconduct in violating Appellant's Constitutional Rights?

6. Did [the] Trial Court commit an error of law by stating that Appellant's Complaint is being used as a means of challenging his criminal convictions without any evidence to support such a claim?

7. Did [the] Trial Court abuse its discretion or commit an error of law by dismissing Appellant's Complaint with prejudice, without allowing Appellant to amend his Complaint?

8. Did [the] Trial Court abuse its discretion by sustaining Judicial Appellees' Preliminary Objections without considering Appellant's Response to these Preliminary Objections?

9. Did [the] Trial Court abuse its discretion by failing to state on the Record which of the Preliminary Objections raised by

Howland argues that the Trial Court erred by concluding that Attorney and Judicial Appellees were shielded from liability by high public official immunity and judicial immunity, respectively. Howland challenges the Trial Court's determination that he failed to state a claim upon which relief could be granted. Howland maintains that he adequately alleged "several claims of Constitutional Violations committed by the [Attorney and Judicial] Appellees, against Appellant, signifying viable claims if proven." Howland's Br. at 21.

Howland also contends that the Trial Court did not fairly consider his position in disposing of Judicial Appellees' Preliminary Objections. He maintains that the Trial Court's opinion was issued before Howland's response was due and

Judicial Appellees were sustained and upon which grounds, and caused Appellant's Complaint to be dismissed with prejudice?

10. Did [the] Trial Court commit an error of law by stating that the Constitutional violation committed by [Judge Totaro], which occurred on 11/18/21, was time-barred from Appellant's Complaint filed on 11/13/23?

11. Did [the] Trial Court commit an error of law by stating that the Judicial Appellees are entitled to Judicial and Sovereign Immunity regardless of their willful misconduct in violating Appellant's Constitutional Rights?

12. Did [the] Trial Court commit an error of flaw by stating that Appellant's Complaint sought to vacate, reconsider, or overturn any judicial decision or invalidate Appellant's criminal sentence, without any evidence to support such a claim?

13. Did [the] Trial Court commit an error of law by stating that Appellant's Complaint is barred by the Law of the Case Doctrine?

14. Did [the] Trial Court abuse its discretion or commit an error of law by stating that Appellant failed to state a claim or a cause of action upon which relief can be granted?

15. Did [the] Trial Court abuse its discretion or commit an error of law by dismissing Appellant's Complaint with prejudice, without allowing Appellant to amend his Complaint?

6

simply mirrored the Judicial Appellees' brief in support of their preliminary objections, thus prejudicing Howland.

Finally, Howland posits that the Trial Court should be reprimanded for its failure to specify the grounds upon which Howland's Complaint was dismissed and why, thereby causing "unnecessary delay." Howland's Br. at 20.

In response, Attorney and Judicial Appellees argue that they are immune from Howland's suit and that he has failed to state a claim upon which relief can be granted. Attorney Appellees also argue that Howland is using the current matter as an impermissible mechanism to collaterally appeal his criminal conviction. Law Enforcement Appellees maintain that they were never served original process and that a notice of appeal was never filed after the Trial Court's order denying Howland's motion for summary judgment, thereby depriving this Court of jurisdiction over them in this matter.[7] Because the jurisdictional issue is dispositive of Law Enforcement Appellees' involvement in the matter, we address it first.

### III. Discussion
### A. Failure to File Notice of Appeal

Under Rule 902(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 902(a), "an appeal permitted by law as of right from a trial court to an appellate court shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed." Pa.R.A.P. 902(a). This notice of appeal "must be filed in each docket in which the order has been entered." *Id.* If an appellant fails to file a notice of appeal within 30 days after the entry of the order from which the

---

[7] Law Enforcement Appellees make these arguments in their principal appellate brief as requested by this Court despite the fact Howland never filed a notice of appeal in the Law Enforcement Appellees' docket.

appeal is taken, the appeal must be quashed for lack of jurisdiction. *Id.* 902(b)(2) & 903(a); *see also Cmwlth. v. Williams*, 106 A.3d 583, 587 (Pa. 2014) ("[A]n appellant's failure to appeal timely an order generally divests the appellate court of its jurisdiction to hear the appeal.").

Here, the matters between Howland and the Law Enforcement Appellees, Attorney Appellees, and Judicial Appellees were each separately docketed before the Trial Court. As such, Howland was responsible for filing a timely notice of appeal in each docket after which an appealable order has been entered. However, Howland appealed only the Trial Court's orders as to Attorney and Judicial Appellees. Pursuant to Rule 902(b)(2) of the Pennsylvania Rules of Appellate Procedure, this Court cannot exercise jurisdiction over Law Enforcement Appellees because the Trial Court's Order denying Howland's motion for summary judgment was issued on September 3, 2024,[8] and no notice of appeal followed and there is no active appeal of the matter.

## B. Immunity

### 1. High Public Official Immunity

The issues of immunity and right to relief must be addressed jointly. Pennsylvania law is well established that

> [a] court may sustain preliminary objections only when it is clear and free from doubt the plaintiff will be unable to establish a right to relief, even when the court accepts as true all well-pleaded, material, and relevant facts alleged

---

[8] We note, in any event, that an order denying summary judgment is interlocutory and generally not immediately appealable. *See Pa. Tpk. Comm'n v. Atl. Richfield Co.*, 394 A.2d 491 (Pa. 1978); Pa.R.A.P. 311 & 341.

in the complaint and every inference that is fairly deducible from those facts.

*Doe v. Franklin Cty.*, 174 A.3d 593, 602 (Pa. 2017) (citing *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008)). An inability to establish a right to relief automatically exists where a plaintiff brings a suit against a high public official that is immune from the lawsuit due to actions taken in the course of his official duties and within the scope of his authority. *See Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001) ("It has long been held that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties."). This Pennsylvania Supreme Court has determined that both district attorneys and assistant district attorneys qualify as high public officials, and that the scope of common law immunity is absolute, such that immunity

> is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority*[.]

*Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952) (emphasis in original); *see also Durham*, 722 A.2d at 70 (noting that the public interest would be hindered if both district attorneys and assistant district attorneys could not carry out their duties "without being hampered by civil suits claiming damages").

Here, Howland argues that Attorney Appellees are not protected by high public official immunity because they acted outside the scope of their official duties and authority by communicating "*ex parte* . . . with the News Media." Howland's Br. at 3. While communications with news media outlets are limited by

9

Rule 3.8(e) of the Pennsylvania Rules of Professional Conduct, Pa.R.P.C. 3.8(e), such comments do not qualify as *ex parte* communications. While *ex parte* communications may constitute violations of procedural due process, "an *ex parte* communication, by definition, involves the inclusion of one party in a consultation with a judge over the exclusion of another." *Cmwlth. v. Murray*, 83 A.3d 137, 155 (Pa. 2013) (citing *Yohn v. Love*, 76 F.3d 508 (3d Cir. 1996)). Thus, as there was no judge involved in DA Adams' communications with the news media, such communications did not qualify as *ex parte*.

As to the actual press conference, a district attorney is not prohibited from making statements about a pending matter. Rather, a prosecutor may make "statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose[.]" Pa.R.P.C. 3.8(e). As previously stated, such statements are limited by Rule 3.8(e) to protect a defendant's right to a fair trial and to decrease the "likelihood of heightening public condemnation of the accused." *Id.* In *McCormick v. Specter*, 275 A.2d 688, 689 (Pa. Super. 1971),[9] the Superior Court further determined that a district attorney had immunity for purportedly "excessive" statements made at a press conference when the statements were made for the purpose of informing the public and were "closely related" to a pending matter.

Here, DA Adams made several statements regarding children's safe use of social media platforms. She stated that this case was "a stark reminder of the dangers children can encounter online," and that "[s]ocial networking platforms can be hunting grounds for predators hoping to contact and victimize children." Trial

---

[9] While not binding on this Court, decisions of the Superior Court may be cited as persuasive where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Ct. 1925(a) Op. for Attorney Appellees, 9/24/24. DA Adams further informed the public that "[t]he collaborative investigation revealed Mr. Howland's illicit plan to remove this child from her home state." *Id.* While the press conference may arguably have included "excessive" statements about the case—particularly with regard to Howland's "illicit plan"— Pennsylvania recognizes a strong public interest in matters involving child safety. *See, e.g. Pittsburgh Action Against Rape v. Dep't of Pub. Welfare*, 120 A.3d 1078, 1081 (Pa. Cmwlth. 2015) (citing *P.R. v. Dep't of Pub. Welfare*, 801 A.2d 478, 483 (Pa. 2002) (stating that identifying perpetrators of abuse serves to protect children)). Thus, DA Adams had a legitimate interest for warning parents of the dangers their children could face online, and her actions were not removed from the protections of high public official immunity.

Next, Howland maintains that ADA Muller acted outside the scope of her duties when she allegedly withheld material evidence in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963). Under the current *Brady* doctrine, a prosecutor must disclose evidence that is both favorable to the accused and "material either to guilt or punishment." *Id.* at 87. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Where a defendant makes such a showing, procedural due process requirements require a new trial. *Id.* at 691. This limited remedy "simply requires that the defendant be treated fairly" and "furthers the societal interest in prosecuting criminal defendants to conclusion." *U.S. v. Coleman*, 862 F.2d 455, 458-59 (3d Cir. 1988).

Even if ADA Muller had committed a *Brady* violation, criminal defendants are not entitled to civil damages from prosecutors who commit *Brady*

11

violations because such violations are committed within the scope of their official duties. *See Durham*, 772 A.2d at 69. Moreover, as a criminal matter, the proper mechanism to challenge the alleged *Brady* violation was through direct appeal and post-conviction proceedings pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546. *See Cmwlth. v. Roney,* 79 A.3d 595, 609 (Pa. 2013) (*Brady* issues which could have been raised at trial and/or on direct appeal but were not, were waived for collateral review). Howland failed to pursue this claim in both instances. *See Cmwlth. v. Howland* (No. 1047 MDA 2022, filed February 14, 2023); *Cmwlth. v. Howland* (No. 434 MDA 2025, filed December 2, 2025). As such, Howland's *Brady* argument is immaterial because it was not properly raised.

Because the determinations of immunity and waiver are dispositive of all of Howland's claims against Attorney Appellees, Howland has no right to relief, and the Trial Court did not abuse its discretion by dismissing the claims against Attorney Appellees with prejudice.

## 2. Judicial Immunity

As stated previously, a plaintiff's right to relief does not exist where a defendant is immune from the suit. In Pennsylvania, "judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not clear absence of all jurisdiction over the subject matter and person." *Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (citing *Feingold v. Hill*, 521 A.2d 33 (Pa. Super. 1986)). Here, no such absence of jurisdiction by Judicial Appellees is alleged. Accordingly, the Trial Court properly applied absolute judicial immunity.[10]

---

[10] This Court does not address the rest of Howland's arguments because Attorney and Judicial Appellees' immunity bars his claims and right to relief.

12

## IV. Conclusion

Based on the foregoing discussion, the Trial Court's orders are affirmed.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Evan Howland,            :     CASES CONSOLIDATED
                    Appellant   :
                                :
        v.                      :
                                :
Officer Karl Hartranft, Officer :
Christopher Pfeiffer, Officer Bart :
Hollis, Detective Robert Bradfield of :
the West Hempfield PD, Judge    :
Nancy Hammil, Judge Miles Bixler, :
Judge Andrew Lafever, Judge Donald :     Nos. 1478 C.D. 2024
Totaro, District Attorney Heather :            1479 C.D. 2024
Adams, and ADA Amy Muller       :

**PER CURIAM**                  **O R D E R**


    AND NOW, this 16th day of March, 2026, the orders of the Court of Common Pleas of Lancaster County dated July 5, 2024 are AFFIRMED.